UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

PATRICK JOHN PELLEGRINI,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

No. 2:25-cv-02612-SCR

OPINION AND ORDER

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401-34, and supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. For the reasons that follow, the undersigned will GRANT Plaintiff's motion for summary judgment (ECF No. 15) and DENY the Commissioner's cross-motion for summary judgment (ECF No. 19). The matter will be reversed and remanded to the Commissioner for further proceedings.

## I. PROCEDURAL BACKGROUND

Plaintiff applied for DIB and SSI on October 5, 2022, alleging disability beginning on July 15, 2020. Administrative Record ("AR") 227-259.[1] Plaintiff's application was denied

[1] The AR is electronically filed at ECF No. 7. When referencing the AR, page references are to the number in the lower right corner of the page, not the CM/ECF generated header. References to briefs are to the page number generated on the CM/ECF header.

initially and on reconsideration. Plaintiff requested a hearing, which was held before administrative law judge ("ALJ") David Skidmore on July 2, 2024. AR 14-42.

On September 25, 2024, the ALJ found Plaintiff was not under a disability from July 15, 2020, through the date of the decision. AR 72-78. On July 17, 2025, the Appeals Council denied review, leaving the ALJ's decision as the final decision of the Commissioner. AR 1-3 (decision).

Plaintiff filed this action on September 11, 2025. ECF No. 1. The parties filed cross-motions for summary judgment, based upon the Administrative Record filed by the Commissioner. ECF Nos. 15 & 19. Plaintiff filed a reply brief. ECF No. 22.

## II. FACTUAL BACKGROUND

Plaintiff was born in January 1969, and was 53 years old at the time of his application. AR 253. At the time of the hearing in June 2024, Plaintiff was 55 years old, and he testified he had not worked since 2019. AR 20-21. Plaintiff testified that he had about 14 years of schooling, including "some college". AR 20.

Plaintiff's past work was in "merchandise resetting," where he would go to large retailers and move items and set displays in stores. AR 21. He testified he was sometimes on his feet "close to 15 hours a day" and that he had to be able to lift 50 to 60 pounds. AR 21. Plaintiff testified he was no longer able to do that job due to foot numbness, and having a bad back. AR 22. Plaintiff testified he had neuropathy and was taking a daily medication. AR 23. He stated his medication had recently been increased due to "feeling more burning and nerve-ending type of sensations in my feet." AR 23. He stated he sits with his feet up to alleviate swelling and tension. AR 24. He testified to a past rotator cuff surgery, and a "bad back", which made it difficult to even put his shoes on. AR 25. He stated this affected his ability to lift and carry items. AR 25. Plaintiff testified to lower back pain that radiates into his legs. AR 26.

Plaintiff also testified to an incident where he was stabbed in January 2023. AR 31. Plaintiff's stab wounds included being stabbed in the left lung, and he testified: "I get shortness of breath pretty quick like I never did before." AR 31. He testified that he still feels pain and tightness in his left lung. AR 31.

Plaintiff testified to some difficulties with activities of daily living. He stated he can go

grocery shopping, but it is difficult to get out of the car, and he uses a grocery cart for stability. AR 27. When he gets home, he is "too tired and sit down and catch [his] breath and put [his] feet up before [he] could even unload the groceries." AR 27-28. He testified to having grab bars in the shower to help get into the tub, and to difficulty putting on his shoes. Plaintiff testified he does not use a cane, and that walking sometimes helps with his other problems. AR 29-31.

## III. LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld "if it is supported by substantial evidence and if the Commissioner applied the correct legal standards." *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1011 (9th Cir. 2003). "'The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ..'" *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

Substantial evidence is "more than a mere scintilla," but "may be less than a preponderance." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks omitted). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." *Widmark v. Barnhart*, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

Although this court cannot substitute its discretion for that of the Commissioner, the court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." *Desrosiers v. Secretary of HHS*, 846 F.2d 573, 576 (9th Cir. 1988); *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985) ("The court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). However, the court may review only the reasons stated by the

ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue,* 495 F.3d 625, 630 (9th Cir. 2007); *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss").

The court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" *Robbins v. Soc. Sec. Admin*., 466 F.3d 880, 885 (9th Cir. 2006) (quoting *Stout v. Commissioner*, 454 F.3d 1050, 1055 (9th Cir. 2006)); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

**IV. RELEVANT LAW**

Social Security benefits are available for eligible individuals who are "disabled." 42 U.S.C. § 1381a. An individual is "disabled" if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §1382c(a)(3)(A); *see also Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

20 C.F.R. §§ 404.1520(a)(4)(i), (b); 416.920(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, the claimant is not disabled.

*Id*., §§ 404.1520(a)(4)(ii), (c); 416.920(a)(4)(ii), (c).

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is disabled. If not, proceed to

> step four.

*Id.,* §§ 404.1520(a)(4)(iii), (d); 416.920(a)(4)(iii), (d).

> Step four: Does the claimant's residual functional capacity make her capable of performing her past work? If so, the claimant is not disabled. If not, proceed to step five.

*Id.*, §§ 404.1520(a)(4)(iv), (e), (f); 416.920(a)(4)(iv), (e), (f).

> Step five: Does the claimant have the residual functional capacity perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Id.*, §§ 404.1520(a)(4)(v), (g); 416.920(a)(4)(v), (g).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. 20 C.F.R. §§ 404.1512(a), 416.912(a) ("In general, you have to prove to us that you are blind or disabled"); *Bowen*, 482 U.S. at 146 n.5. However, "[a]t the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy." *Hill v. Astrue,* 698 F.3d 1153, 1161 (9th Cir. 2012); *Bowen*, 482 U.S. at 146 n.5.

## V. THE ALJ's DECISION

The ALJ made the following findings:

> 1. [Step 1] The claimant has not engaged in substantial gainful activity ("SGA") since the alleged onset date of July 15, 2020 (AR 74).
>
> 2. [Step 2] The claimant has several medically determinable impairments (including atrial fibrillation, hypertension, obesity, diabetes, neuropathy, and thoracic spine degenerative joint disease), but does not have a severe impairment or combination of impairments. (AR 74-75).
>
> 3. The medically determinable impairments could reasonably be expected to produce the alleged symptoms, however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent. (AR 76).
>
> 4. The claimant has not been under a disability, as defined in the Social Security Act, at any time from July 15, 2020, the alleged onset date, through September 25, 2024, the date of decision. (AR 78).

## VI. ANALYSIS

Plaintiff's contends that the ALJ erred at step two of the analysis in finding that Plaintiff had no severe impairments. AR 15 at 6. The ALJ identified several medically determinable

impairments ("MDI"s), but no severe impairments. Plaintiff claims his atrial fibrillation, pedal neuropathy, and the combined effect of obesity with his other impairments amount to a severe impairment. *Id.* at 7. Plaintiff further argues that the ALJ failed in his duty to develop the record and should have ordered a consultative exam. *Id.* at 14-15. The Commissioner offers a fairly brief response, arguing the step two finding was supported by substantial evidence and the record sufficiently developed. ECF No. 19.

**1. <u>Step Two</u>**

At step two, "the ALJ assesses whether the claimant has a medically severe impairment or combination of impairments that significantly limits his ability to do basic work activities." *Webb v. Barnhart*, 433 F.3d 684, 686 (9th Cir. 2005), citing 20 C.F.R. § 404.1520. "If the ALJ finds that the claimant lacks a medically severe impairment, the ALJ must find the claimant not to be disabled." *Id.* at 686. Step two is a "de minimis screening device used to dispose of groundless claims." *Id.* at 687 (internal citation omitted). If an ALJ is unable to determine clearly the effect of an impairment on an individual's ability to do basic work activities, then the sequential evaluation should not end with a step two finding of not severe. *Id.*, citing Social Security Ruling (SSR) 85-28.

Recently, the Ninth Circuit discussed these step two principles: "Each time we have reviewed an ALJ's step-two analysis, we have reiterated the corollary principles that claimants need only make a de minimis showing for the analysis to proceed past this step and that properly denying a claim at step two requires an unambiguous record showing only minimal limitations." *Glanden v. Kijakazi*, 86 F.4th 838, 843-44 (9th Cir. 2023). Step two involves a "low bar," that "screen[s] out only groundless claims." *Id.* at 845.

Here, Plaintiff was 55 years old at the time of his hearing and testified that he was six foot tall and between 285 and 290 pounds. AR 25. The ALJ found that Plaintiff had numerous MDIs, including: 1) pulmonary edema; 2) atrial fibrillation; 3) hypertension; 4) obesity; 5) history of stab wound injuries to the neck and chest; 6) history of bilateral shoulder arthritis; 7) diabetes mellitus; 8) peripheral neuropathy; and 9) thoracic spine degenerative disc disease. AR 74.

////

Despite these nine MDIs, the ALJ found that none of them singularly, or in combination, qualified as severe.

Plaintiff described in his function report that his atrial fibrillation ("a-fib") causes swelling in his lower legs and feet, and in combination with the neuropathy in his feet, his walking and standing are limited and he may be prone to tripping and falling. AR 321. He described having balance problems, that it was difficult to get into the bathtub, and to do tasks such as putting on his shoes and socks. AR 322. Plaintiff stated that due to his a-fib he had his heart shocked five times in the last four years. AR 336. Plaintiff also stated that he spent nine days in the hospital, two in the ICU, after a stabbing in January 2023, and that he was still experiencing daily pain in June 2023. AR 338.

Plaintiff contends that his a-fib, neuropathy, and obesity should have been considered severe at step two. ECF No. 15 at 11. Plaintiff relies on Social Security Ruling 19-2p, which states in part: "If the person's obesity, alone or in combination with another impairment(s), significantly limits his or her physical or mental ability to do basic work activities, we find that the impairment(s) is severe." ECF No. 15 at 12. SSR 19-2p further states that "[n]o specific weight or BMI establishes obesity as a 'severe' or 'not severe' impairment." That Ruling further provides that the agency "must consider the limiting effects of obesity when assessing a person's RFC." Here, in concluding that Plaintiff's obesity was non-severe, the ALJ stated in a relatively conclusory manner, and without citation to the medical record: "The record shows that claimant's obesity does not cause a mass effect on the claimant's other body systems." AR 76.

As noted in the ALJ's decision, Plaintiff had been diagnosed with "persistent atrial fibrillation." AR 77. Plaintiff was taking multiple medications for a-fib. AR 1199, 1203. In 2019, Plaintiff had a surgical ablation procedure for his a-fib. AR 1107. As to Plaintiff's neuropathy, the mentions in the medical record are sparse. At the hearing before the ALJ, counsel pointed to July 2022 as a "possible onset date" for the neuropathy. AR 19. At that visit on July 7, 2022, Plaintiff reported "bilateral feet burning pain since a few months ago." AR 443. Plaintiff refused to take off his shoes or socks preventing a fuller examination. AR 444. Plaintiff was prescribed Gabapentin, 100mg, up to three times per day. AR 445. The other mention of

neuropathy in the medical record is nearly two years later, in June 2024, when Plaintiff has a telehealth appointment and describes numbness in both feet. AR 1192. It is assessed as "diabetic peripheral neuropathy" and the treatment plan is to increase Gabapentin to 300mg twice daily. AR 1195.

"[A]n ALJ may find an impairment or combination of impairments 'not severe' at step two only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Glanden*, 86 F.4th at 844 (citation and quotation omitted). In order to deny a claim at step two, the ALJ must have "substantial evidence to find that the medical evidence clearly established that [the claimant] did not have a medically severe impairment or combination of impairments." *Webb*, 433 F.3d at 687. As noted above, step two is for screening out only groundless claims. *See Glanden*, 86 F.4th at 845 ("Because we interpret step two as screening out only groundless claims, the record in this case counsels [remand].")

Plaintiff's claim is not groundless. Plaintiff presented as an obese individual, age 55,[2] with numerous MDIs. The ALJ's analysis should have proceeded through the five-step sequential evaluation process. Just as in *Webb* and *Glanden*, the Court does not express an opinion that Plaintiff will be able to establish he is entitled to benefits. *See Glanden*, 86 F.4th at 848 ("We express no view as to whether Glanden will succeed in proving he is entitled to benefits; we hold only that denial at step two was premature."); *Webb*, 433 F.3d at 688 ("We do not intimate that Webb will succeed in proving that he is disabled and entitled to disability insurance benefits."). However, the denial at step two was premature.

**2. <u>Duty to Develop the Record</u>**

Plaintiff argues that the agency did not adequately develop the record and should have at least conducted a consultative exam prior to a step two denial. ECF No. 15 at 14-15. Defendant argues that because the ALJ did not find the record inadequate or ambiguous, there was no requirement to order additional testing or evaluation. ECF No. 19 at 2-3.

In social security cases, the ALJ "has an independent duty to fully and fairly develop the

---

[2] This is considered by the Social Security Regulations to be of "advanced age". 20 C.F.R. § 404.1563(e).

record to assure that the claimant's interests are considered." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). This duty exists even when the claimant is represented, and when the claimant is unrepresented "the ALJ must be especially diligent in exploring for all the relevant facts." *Id.* "The ALJ's duty to develop the record fully is also heightened where the claimant may be mentally ill and thus unable to protect her own interests." *Id.*, citing *Higbee v. Sullivan*, 975 F.2d 558, 562 (9th Cir.1992). "Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to conduct an appropriate inquiry." *Id.* (internal quotation and citation omitted).

Here, the ALJ did not specifically find the record to be inadequate or ambiguous. In *Webb*, the Ninth Circuit found the "medical evidence was sufficiently ambiguous to trigger the ALJ's duty because of obvious vicissitudes in Webb's health, particularly the ways in which his condition improved and worsened as a result of the afflictions and their treatments." 433 F.3d at 687. Here, Plaintiff received treatment for several years for a-fib, and was taking multiple medications. Despite having only two medical visits in the record for his neuropathy, Plaintiff's condition was apparently worsening, as his medication had recently increased. Plaintiff had also, in 2023, the year before the hearing, been stabbed and spent multiple days in the hospital. There is some ambiguity in the record as to whether he had any remaining limitations from the stabbing event. Given these considerations, a consultative exam would have been beneficial.

Defendant argues that the agency "has broad latitude in ordering a consultative examination." ECF No. 19 at 2, citing *Reed v. Massanari*, 270 F.3d 838, 842 (9th Cir. 2001). While it is correct that the agency has discretion, a consultative examination can be beneficial to "resolve an inconsistency in the evidence or when the evidence as a whole is insufficient." 20 C.F.R. § 404.1519a(b). One of the specified reasons for why a consultative exam may be ordered is when "[t]here is an indication of a change in your condition that is likely to affect your ability to work, but the current severity of your impairment is not established." 20 C.F.R. § 404.1519a(b)(4). Here, Plaintiff had recently reported in June 2024 that his neuropathy was worsening and his medication dosage was increased. AR 1192-1195.

On remand, the ALJ shall order a consultative examination if the ALJ finds that the record

is insufficient or there is an ambiguity in the record that should be resolved. *See Reed*, 270 F.3d at 842.

**VII. CONCLUSION**

The Court concludes that because the record did not clearly establish a slight impairment with no more than a minimal effect on Plaintiff's ability to work, the ALJ erred in denying the claim at step two. *See Glanden*, 86 F.4th at 848. Accordingly, it is appropriate to remand this matter to the agency for further proceedings consistent with this decision.

**IT IS HEREBY ORDERED:**

1. Plaintiff's motion for summary judgment (ECF No. 15) is GRANTED;
2. The Commissioner's cross-motion for summary judgment (ECF No. 19) is DENIED;
3. This matter is REMANDED to the Commissioner for further proceedings consistent with this decision; and
4. The Clerk shall enter Judgment for Plaintiff and close this case.

SO ORDERED.

DATED: August 25, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE